389 P.2d 398

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**G. W. JONES, Defendant-Appellant.**

**No. 7270.**

Supreme Court of New Mexico.

Feb. 10, 1964.

J. B. Newell, Las Cruces, for appellant.

Earl E. Hartley, Atty. Gen., Thomas Donnelly, George R. Schmitt, Asst. Attys. Gen., Santa Fe, for appellee.

CHAVEZ, Justice.

This is an appeal from a conviction of obtaining money under false pretenses. Section 40–21–1, N.M.S.A., 1953 Comp.

On June 29, 1961, appellant was first charged by information of obtaining money with intent to cheat and defraud under § 40–21–3, N.M.S.A., 1953 Comp. On August 2, 1961, an amended information was filed under § 40–21–1, supra. Before trial, appellant filed a motion to dismiss the amended information on the ground of failure to have a preliminary hearing. The motion was overruled. Arraignment was held on the amended information and the 24-hour-notice period, as well as the reading of the information, were waived by appellant. Trial was held and appellant was found guilty. The trial court pronounced sentence for a period of not less

than one year nor more than five years, with two years of the maximum sentence suspended. This appeal followed.

The facts leading to appellant's conviction are as follows. Automotive Chemicals, Inc., a New Mexico corporation, was incorporated with appellant as one of the incorporators. Appellant was given the position as plant manager. Appellant then employed a Mr. Allman to sell stock for the corporation, representing to Allman that he had authority to employ him in that position. Allman contacted Mr. and Mrs. William D. Holden, owners of the Alameda Laundry and Cleaners, as prospective purchasers, but before any sale was made, Allman told them that he wanted them to talk to an officer of the corporation. Allman then introduced the Holdens to appellant, who represented himself to them as a vice president of the corporation. Appellant also told the Holdens that he had $70,000 worth of stock in escrow in a bank in Alamogordo and that if they "thought that there was anything crooked about it, that he wouldn't have that much stock in it himself." On June 21, 1960, in a letter to the board of directors of Automotive Chemicals, Inc., appellant submitted his resignation as plant manager and assistant to the president. There is evidence that appellant was never selected or designated by the board of directors of the corporation as assistant to the president. Appellant further represented that the stock was a good buy and that, in his opinion, it would be a growing concern. Upon receiving payment by check in the amount of $500, drawn on the Alameda Laundry and Cleaner's account and signed by Mrs. Holden, appellant represented to them that they would receive their stock certificate within a period of about six weeks. This payment was never shown on the transfer books of the corporation, nor did the Holdens ever receive their stock certificate.

Appellant sets out thirteen points upon which he relies for reversal. However, in his reply brief, appellant abandons the last three points.

The remaining ten points may be grouped into two general points: (1) Was error committed when the trial court overruled appellant's motion to dismiss the amended information? (2) Were there any errors committed as to the elements of the offense, as to admissions of the evidence, or instructions to the jury?

Appellant's first point contends that the trial court erred in not dismissing the amended information because of lack of a preliminary hearing. The record discloses that on June 29, 1961, appellant was charged with obtaining money with intent to cheat and defraud under § 40–21–3, supra, and a preliminary hearing was held; on August 2, 1961, the information was amended to charge appellant with obtaining money under false pretenses under § 40–

21-1, supra; on February 14, 1962, the first charge was dismissed, motion was made and denied to dismiss the amended information, and arraignment was held on the amended information. Appellant waived the reading of the information, waived the 24-hour-notice period, stated that he was satisfied with his representation and advice of counsel, and entered a plea of not guilty.

The record discloses that the following occurred before the arraignment:

"BY THE COURT: Was he given a preliminary hearing on both charges?

"BY MR. SOSA: Yes, Your Honor, he was given a preliminary hearing with respect to both charges Mr. Allman and Mr. Edwards, and they both testified at that time.

"BY THE COURT: Here's the proposition, I think the motion is well taken as far as the original information is concerned and those will be dismissed, but as to the second charge that is pending, he has evidently had a preliminary hearing on them, I mean the second information, at this time there will be an arraignment on that.

"BY MR. NEWELL: Then in both cases we waive the 24 hours, I don't know what the record showed before, I am not taking any advantage of the Court, we waive the 24 hour notice and enter a plea of not guilty to both informations.

"BY MR. SOSA: Both the amended informations?

"BY MR. NEWELL: Yes."

In State v. Bailey, 62 N.M. 111, 305 P. 2d 725, this question was before this court and it was disposed of in the following language:

"The court did not err in putting appellant to trial upon an information filed prior to the preliminary examination. While no person shall be held on information without having had a preliminary examination, unless such examination is waived, Article II, § 14, New Mexico Constitution, appellant not only was accorded a hearing but he waived this right by his plea. State v. Gallegos, 46 N.M. 387, 129 P.2d 634; State v. Trujillo, 33 N.M. 370, 266 P. 922; State v. Vigil, 33 N.M. 365, 266 P. 920."

■ Appellant's third point contends that the amended information charged him with having obtained $500 from Mrs. Holden, while the proof shows that the $500 check was drawn on the Alameda Laundry and Cleaner's account and signed by Mrs. Holden, and that the record fails to disclose any evidence showing a connection between the Alameda Laundry and Cleaner's account and Mrs. Holden.

There is no merit in this contention. The record shows that Mr. and Mrs. Holden were the owners of the Alameda Laundry and Cleaners at the time that Mrs. Holden signed the check and gave it to appellant at the laundry. We doubt that there was a variance, but even if so, it was not such as would impair the substantial rights of appellant. State v. Peke, 70 N.M. 108, 371 P.2d 226. We have also held that, in a conviction for obtaining money under false pretenses, any variance must operate to mislead the defendant to his injury. State v. Gilmore, 47 N.M. 59, 134 P.2d 541.

■ Appellant also contends that the statute, § 40–21–1, supra, obtaining money under false pretenses, does not define an offense as it does not state whether the offense is to be a felony or a misdemeanor.

In State v. Tinsley, 34 N.M. 458, 283 P. 907, the court discussed this problem, saying that there were two views on the question; one view being that punishment by imprisonment in the penitentiary makes an offense a felony, and the other view being that imprisonment for longer than six months makes an offense a felony. In the case before us, § 40–21–1, supra, requires imprisonment in the penitentiary, and § 40–1–3, N.M.S.A., 1953 Comp., makes the offense a felony.

■ Appellant further claims that the trial court erred in overruling appellant's motion to dismiss, because the information does not contain the word "designedly," as set out in the statute, § 40–21–1, supra. We look to § 41–6–7, N.M.S.A., 1953 Comp., entitled "Charging the offense." The amended information charges that appellant unlawfully obtained money under false pretenses with intent to defraud. It enumerates the section defining the offense and fixing the penalty, § 40–21–1, supra. This is sufficient. State v. Lucero, 70 N.M. 268, 372 P.2d 837; State v. Romero, 69 N. M. 187, 365 P.2d 58.

Appellant's claimed errors as to the elements of the offense may be discussed together. Under point VI, appellant contends that the trial court erred in not directing a verdict for appellant because of failure of proof of past or present material facts upon which Mrs. Holden relied. Under point VII, it is contended that error was committed in the trial court's refusal to grant appellant's requested instruction No. 1, to the effect that the state must prove beyond a reasonable doubt that appellant knew that the representations were false and untrue and that such representations were made by appellant with intent to defraud Mrs. Holden. Appellant's point VIII contends that the trial court should have given appellant's requested instruction that, to constitute the offense, there must be a false representation of a past or present representation of fact with reliance. Appellant's point II claims error because the trial court permitted evidence to be intro-

duced that the $500 was not returned to Mrs. Holden.

At the present time, there are four views regarding the statutory crime of obtaining money under false pretenses. The old traditional view required the representations to be of an existing fact or one which had theretofore occurred. Jones v. State, 236 Ala. 30, 182 So. 404; Lawson v. State, 120 Ark. 337, 179 S.W. 818; State v. McMahon, 49 R.I. 107, 140 A. 359.

Some courts, however, have formed the "ability" rule, that future representations may imply a present ability to perform an act and thus amount to an existing fact. People v. Cohn, 358 Ill. 326, 193 N.E. 150; Hameyer v. State, 148 Neb. 798, 29 N.W. 2d 458.

Further away from the traditional view, some courts have broadened the term "false pretenses" to include promises made to do a future act with a present intention not to fulfill that promise as an existent false representation. Smith v. Fontana (D.C.S.D. N.Y.1942), 48 F.Supp. 55.

In 2 Wharton's Criminal Law and Procedure, § 589, pp. 320–322, the following is stated:

"The false representation must be as to a material fact or event, existing or past. A statement as to a future event or a promise to produce a future result is not a criminal representation unless there is implicit therein a statement of the defendant's ability or capacity to achieve that result, or, according to some courts, a statement of his present intention to achieve that result, and such implied statement is false.

"Nevertheless a misrepresentation as to an existing or past fact is nonetheless a false pretense because it is coupled with a promise or prediction as to the future. * * *"

A more recent view is that expressed in an excellent opinion by Justice Traynor of the California Supreme Court in People v. Ashley, 42 Cal.2d 246, 267 P.2d 271, wherein the rule in California was stated to be that a promise made without intention to perform is a misrepresentation of a state of mind, a misrepresentation of existing fact, and thus is a false pretense.

The testimony in the case before us reveals that the misrepresentation complained of occurred at a meeting in the Arcade Coffee Shop with Mr. and Mrs. Holden, the complaining witnesses, a Mr. Allman, and the defendant being present. At that time, the defendant told them that he was vice president of the company; that he had $70,000 worth of stock in escrow in the bank in Alamogordo himself; that there was a chance of a government contract with a branch of the services; that it was a growing concern; and that "if there was anything crooked about it he wouldn't have.

that much stock in it himself." Subsequent to this time, defendant told the Holdens that their stock certificates would be delayed.

■ Appellant, by stating that he was vice president of the company when in fact, as shown by the prospectus in his possession, he was not, is a material misrepresentation of a present fact. This being the case, appellant's points VI and VII are without merit, as even under the traditional rule, the misrepresentation made by appellant was of an existing fact.

■ In a criminal prosecution, it is, of course, necessary that the prosecution prove every element of the offense charged beyond a reasonable doubt. Likewise, it must be established that the victim relied on the false representation and surrendered her money to appellant on the strength of the false representation. Perry v. Superior Court of Los Angeles County, 57 Cal.2d 276, 19 Cal. Rptr. 1, 368 P.2d 529; State v. Howley, 220 N.C. 113, 16 S.E.2d 705; State v. Cooke, 59 Wash.2d 804, 371 P.2d 39; 2 Wharton's Criminal Law and Procedure, § 600, p. 352. Appellant asserts there is no testimony that the prosecuting witness relied upon the statement; however, in Perry v. Superior Court of Los Angeles County, supra, it is said:

"* * * ' "the express testimony of a victim of false pretense that he was induced to part with his money by the fraudulent statements of the accused is not essential. It is sufficient if the inference of his reliance could have been drawn from all the evidence." ' * * *"

A review of the record convinces us that there was reliance upon appellant's false statement. Therefore, appellant's points VIII and II are also without merit, since the admission of the testimony showing a non-return of the money was proper to show the intent of appellant.

■ Appellant's point IX is that the trial court erred in refusing to grant appellant's instruction to the effect that the jury had a right to consider the intelligence of the prosecuting witnesses. This contention is without merit. There are two positions in the offense of obtaining money under false pretenses regarding the mental condition of the victim. There is the position taken in some of the cases that the statute was designed to extend no further than to embrace such representations as were accompanied with circumstances fitted to deceive a person of common sagacity and exercising ordinary caution. Burrow v. State, 12 Ark. 65; State v. Herman, (Mo.1942), 162 S.W.2d 873; State v. Howley, 220 N.C. 113, 16 S.E.2d 705. The other position, which seems to be the majority view, holds that the statutes covering the crime are designed to protect not only the ordinarily wary and prudent, but also the ignorant, credulous, and foolish. State v. Foot, 100

Mont. 33, 48 P.2d 1113; Slaughter v. Commonwealth, 222 Ky. 225, 300 S.W. 619, 56 A.L.R. 1209; Palotta v. State, 184 Wis. 290, 199 N.W. 72. In the latter case, it was held that there may be some representations that are so utterly and palpably absurd that the court may decide as a matter of law that they could not deceive the most credulous.

Under point X, appellant claims error because the trial court used the words "false and fraudulent statements" in instruction No. 7, contending that it is a comment on the evidence and misleading to the jury. This contention is without merit. This instruction states that the jury must believe from the evidence beyond a reasonable doubt that the representations made by appellant were false and fraudulent; that they were made with intent to defraud Mrs. Holden; and that Mrs. Holden, relying upon said false and fraudulent statements, gave the $500 to appellant. These were matters which were clearly within the province of the jury to decide. We might also add that the elements of the offense are also set out in the trial court's instruction No. 9, which appears to have been requested by appellant and made by the court because of appellant's objection to instruction No. 7.

Finding no error, the judgment of the district court is affirmed.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.